



CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed February 20, 2024**

_____
United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FT. WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| RICHARD KEVIN RUSSELL, | § | CASE NO. 22-41793-MXM-11 |
| | § | |
| DEBTOR. | § | CHAPTER 11 |
| | § | |
| INDEPENDENCE FUEL SYSTEMS, LLC, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | ADV. PROC. NO. 22-04049-MXM |
| | § | |
| RICHARD KEVIN RUSSELL, | § | |
| | § | |
| DEFENDANT. | § | |

## AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

*[Relates to ECF No. 1]*

The Court conducted a multi-day trial on the Complaint[1] filed by Independence Fuel Systems, LLC ("*IFS*" or "*Plaintiff*") seeking (i) to liquidate its claims against Richard Kevin Russell ("*Mr. K. Russell*" or "*Defendant*"), and (ii) a determination that such liquidated claims are nondischargeable under 11 U.S.C. §§ 523(a)(2), (4), and (6).

The Court reviewed and carefully considered the pleadings and briefings filed in this adversary proceeding, testimony of witnesses, exhibits admitted into evidence,[2] documents of which the Court has taken judicial notice,[3] and arguments of counsel. This Findings of Fact and Conclusions of Law constitutes the Court's findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52, made applicable in this adversary proceeding by Federal Rule of Bankruptcy Procedure 7052.[4]

As detailed below, the Court finds and concludes that Plaintiff IFS failed to satisfy—by a preponderance of the evidence—its burden of proof to establish (i) its alleged claims against Defendant Mr. K. Russell, and (ii) that such alleged claims should be declared nondischargeable under § 523. Consequently, the Court will enter a separate judgment for Defendant Mr. K. Russell.

## I.  JURISDICTION AND VENUE

The Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and the standing order of reference in this district. This adversary proceeding constitutes a core proceeding over which the Court has statutory and constitutional authority to

---

[1] *Complaint to Determine Dischargeability of Debt Pursuant to 11 U.S.C. §§ 523(a)(2)(A), (4), & (6)*, ECF No. 1 (the "*Complaint*").
[2] ECF No. 75.
[3] The Court has taken judicial notice, without objection, to various pleadings filed and orders entered in the bankruptcy case of *In re Independence Fuel Systems LLC*, Case No. 22-60301 pending in the United States Bankruptcy Court for the Eastern District of Texas, Tyler Division (the "*IFS Chapter 11 Bankruptcy Case*"). *See* 1/10/2024 hrg. at 12:06, 12:13, 12:14, and 12:19.
[4] Any findings of fact that should more appropriately be characterized as a conclusion of law should be regarded as such, and *vice versa*.

2

enter a final order and judgment pursuant to 28 U.S.C. § 157(b)(2)(A), (I), and (O). Even if this Court would not otherwise have the authority to enter a final judgment, the Court finds that the parties have consented to the Court's issuance of a final judgment in this proceeding. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II. BACKGROUND FACTS

In early 2011, the Defendant Mr. K. Russell, Mr. Charles Neuberger ("***Mr. Neuberger***"), Mr. Benjamin Poole ("***Mr. Poole***"), and Mr. Bradley Thiessen ("***Mr. Thiessen***") met to discuss the potential formation of a company to build and maintain compressed natural gas refueling stations in Texas (the "***CNG Stations***"). They also discussed the idea of building and owning the pipelines for the CNG Stations.

Several months after the above initial meeting, IFS was formed in December 2011. The founding members of IFS consisted of the Defendant, Mr. Neuberger, Mr. Poole, Mr. Thiessen, along with Mr. Raymond Russell ("***Mr. R. Russell***"), Mr. Matt Russell ("***Mr. M. Russell***"), and Mr. David Holy ("***Mr. Holy***") (together, the "***Founding Members***"). The Defendant had previous midstream and exploration experience and was named CEO of IFS with the primary responsibility of fundraising. The Defendant served as CEO for IFS from its inception until July 2022. Mr. Neuberger had previous experience in natural gas trading and distribution and was named President of IFS with the primary responsibility of identifying potential pipelines to be used in the business. Mr. Poole was an attorney and was named as IFS's General Counsel. Mr. Thiessen had substantial experience in engineering and mechanics, so he, along with Mr. Holy, were tasked with designing and building the CNG Stations and then overseeing their day-to-day operations for IFS. Mr. Thiessen served in that capacity until he became CEO in July 2022. Mr. R. Russell—the Defendant's brother—served as the CFO of IFS, and he served in that capacity until July 2022.

Finally, Mr. M. Russell—the Defendant's son—served as the Director of Gas Marketing for IFS and served in that capacity until July 2022.

The original managers of IFS consisted of the Defendant, Mr. Neuberger, and Mr. Poole (together, the "***Board of Managers***").

In 2012, the Defendant began raising capital for IFS through various loans provided by traditional banks,[5] advances made to or on behalf of IFS by various of the Defendant's Affiliates,[6] and cash calls issued by IFS to its Members. The Defendant also began negotiating potential real estate purchases and real property leases for the anticipated CNG Stations. Meanwhile, Mr. Thiessen and Mr. Holy began designing the CNG Stations. Construction of the first CNG Station began in late 2012 and was completed in mid-2013.

Five additional CNG Stations were eventually built over the next few years.[7] From the time of IFS's formation through 2018, IFS experienced cash flow challenges. By 2019, however, the uncontroverted evidence suggests that IFS began experiencing sufficient cash flow to pay its current and past obligations on a timelier basis. Although in 2020 the COVID pandemic negatively impacted IFS, operations began to improve again in late 2021 and into 2022. In the spring of 2022, one of the more profitable CNG Stations was shut down for a period, which caused IFS to lose business.

In or around June of 2022, IFS contends that several of its members discovered that IFS previously took out loans with Origin Bank and one of the loans was now in default. Additionally,

---

[5] IFS obtained loans from Austin Bank, Texas N.A. and Origin Bank.
[6] The Defendant's affiliates include Eastman Midstream, LP ("***Eastman Midstream***"), Toledo Gas Gathering, LLC ("***Toledo***"), Russco Equipment Company, LLC ("***Russco***"), and KevMel, LLC ("***KevMel***") (together, the "***Affiliates***").
[7] Although there is no dispute that IFS owned all six CNG Stations that were ultimately built, the ownership of the pipelines servicing the CNG Stations is disputed and the subject of litigation pending in the Eastern District of Texas.

4

Origin Bank had or was about to initiate a state court receivership action against IFS. Shortly after learning of the Origin Bank loans and the imminent receivership action, the evidence suggests that certain members of IFS forced the Defendant to resign as CEO and Chairman of the Board of Managers in early July 2022. The evidence further suggests that the members of IFS then held a special meeting of members to name a new CEO and to elect a new Board of Managers. Mr. Thiessen was named as the new CEO of IFS, and a new slate of Board of Managers was elected for IFS. Mr. Thiessen then terminated IFS's employment of both Mr. R. Russell and Mr. M. Russell.

On July 13, 2022, IFS filed its IFS Chapter 11 Bankruptcy Case. Thereafter, on December 16, 2022, IFS obtained confirmation of its plan of reorganization filed in the IFS Chapter 11 Bankruptcy Case.[8]

On August 8, 2022, the Defendant filed his above-referenced Chapter 11 bankruptcy case.

On November 11, 2022, IFS filed the Complaint initiating this adversary proceeding.

In its Complaint and during trial, IFS contends that (i) it has various claims against the Defendant; and (ii) such claims constitute obligations owing by the Defendant to IFS that should not be discharged under 11 U.S.C. § 523. IFS's alleged claims against the Defendant fall into the following two general categories: (a) $583,597.79 in transfers to the Defendant that were either not authorized, misappropriated, embezzled, or fraudulent transfers; and (b) acts by the Defendant that constitute either breaches of his fiduciary duties owed to IFS or willful and malicious acts that caused injury to IFS. The Court will first address each of IFS's alleged claims against the

---

[8] *Agreed Order Confirming Debtor's Amended Plan of Reorganization*, ECF No. 102 in the IFS Chapter 11 Bankruptcy Case.

5

Defendant and then determine whether such alleged claims, if established, should be nondischargeable under 11 U.S.C. § 523.

### III. ANALYSIS

Although not a formal count in the Complaint, IFS first contends that it holds both liquidated and unliquidated claims against the Defendant. IFS contends further that its claims against the Defendant constitute obligations that should not be discharged under 11 U.S.C. § 523(a), as detailed in Counts 1-4 of the Complaint.

**A.  IFS contends that $583,597.79 in transfers of IFS funds to the Defendant were either unauthorized, misappropriated, embezzled, or fraudulent**

At trial, IFS primarily focused on thirty-four specific transfers totaling $583,597.79[9] that were made to the Defendant between January 14, 2014, through January 29, 2021. IFS contends that such funds were either unauthorized, misappropriated, embezzled, or fraudulent. The Defendant admits that the transfers were made, but the Defendant denies that the transfers were unauthorized, misappropriated, embezzled, or fraudulent.

*1.  $42,499.92 in unauthorized salary payments*

IFS first contends that the Defendant received the following *unauthorized* salary payments between January 14, 2014, and August 19, 2015, in the total amount of $42,499.92:

```
01/14/2014 – Check #1192 – $ 3,541.66     07/23/2014 – Check #1413 – $ 1,770.83
02/15/2014 – Check #1213 – $ 1,770.83     07/31/2014 – Check #1441 – $ 1,770.83
05/08/2014 – Check #1293 – $ 1,770.83     10/31/2014 – Check #1586 – $10,624.98
05/30/2014 – Check #1325 – $ 3,541.66     08/19/2015 – Check #1919 – $ 8,854.15
06/25/2014 – Check #1363 – $ 1,770.83     08/19/2015 – Check #2003 – $ 7,083.32
```

TOTAL    $42,499.92[10]

---

[9] Complaint, at ¶ 45 and Attachment A; *see also* Exs. 1–29, 31.
[10] *Id.*

6

In support of IFS's contention that the above alleged salaries were not authorized, Mr. Thiessen testified that his "recollection, my understanding was that the board had to approve the salaries of members,"[11] and that he had not "come across"[12] any documents or Board of Managers minutes or resolutions that approved such salaries.

On cross-examination, however, Mr. Thiessen admitted that (i) he was not on the Board of Managers during that timeframe, (ii) he has not seen any Board of Managers minutes or resolutions that authorized such salaries, and (iii) when he became CEO of IFS in July 2022, he was provided with "a truckload of documents that go back to 2011, 2012, 2013,"[13] but he admitted that had not personally reviewed all such books and records.[14] Rather, he testified, unconvincingly, that "I reviewed what was pertinent."[15]

The Defendant, on the other hand, testified that, while he was a member of the Board of Managers, monthly salaries were approved by the Board of Managers for several employees of IFS—including the Defendant, Mr. Neuberger, Mr. Poole, Mr. Thiessen, Mr. R. Russell, Mr. M. Russell, and Mr. Holy. The Defendant testified further that his approved annual salary for 2014 was $1,770.83 bi-weekly ($42,500 annually), but his annual salary for 2015-2018 was reduced to $500 bi-weekly ($12,000 annually) due, in part, to cash flow issues. The Defendant testified further that, as IFS experienced cash flow problems from its inception in 2011 through 2018, IFS would often accrue its salary expense payroll obligations to the Defendant and others, as opposed to

---

[11] Trial Testimony at 2:28:30.
[12] Trial Testimony at 2:29:15.
[13] Trial Testimony at 3:24:00.
[14] Trial Testimony at 3:20:00.
[15] Trial Testimony at 3:22:00.

timely paying its payroll obligations. The Defendant's testimony was corroborated, in part, by the bank statements, cancelled checks, and QuickBooks ledger entries offered into evidence by IFS.

Although Mr. Thiessen disputed that the Board of Managers approved salaries, he admitted that he was entitled to an annual salary of $100,000 in 2014. Yet, IFS did not offer into evidence any corroborating evidence to establish that Mr. Thiessen's salary—as opposed to the Defendant's salary—had been approved by the Board of Managers. Additionally, Mr. Thiessen admitted IFS had accrued, but not timely paid, his salary during that same timeframe. Mr. Thiessen admitted further that his accrued $100,000 salary was eventually paid—not by IFS, but by Toledo, an affiliate of the Defendant.

Based upon the evidence presented at trial, the Court finds and concludes that IFS failed to satisfy—by a preponderance of the evidence—its burden of proof to establish that it has a claim against the Defendant for having received the above "unauthorized" salary payments from IFS.

Even if the Court were to find that the salary payments made to the Defendant were unauthorized (to be clear, the Court does not so find), the Court further finds and concludes that the Defendant's Statute of Limitations affirmative defense [16] to this claim has merit and is sustained. Therefore, IFS's claim that the Defendant received unauthorized salary payments between January 14, 2014, and August 19, 2015, in the total amount of $42,499.92 is time-barred.

Consequently, the Court finds and concludes that IFS's claim against the Defendant for having been paid "unauthorized" salary from IFS is **DENIED** and **DISMISSED**.

---

[16] ECF No. 20, at pg. 9.

### 2. *IFS contends that $541,097.87 in transfers to the Defendant were either unauthorized, misappropriated, embezzled, or fraudulent*

IFS next contends that the Defendant received the following payments from IFS's funds between July 10, 2019, and January 29, 2021, and that such payments were either unauthorized, misappropriated, embezzled, or constitute fraudulent transfers:

| | |
|---|---|
| 07/22/2014 – $30,000.00 | 11/19/2019 – $47,000.00 |
| 02/11/2016 – $      96.35 | 02/14/2020 – $16,913.47 |
| 07/10/2019 – $15,000.00 | 02/18/2020 – $17,000.00 |
| 07/18/2019 – $40,000.00 | 03/13/2020 – $47,000.00 |
| 07/30/2019 – $35,000.00 | 05/19/2020 – $20,000.00 |
| 07/31/2019 – $79,000.00 | 07/17/2020 – $ 7,000.00 |
| 08/01/2019 – $30,000.00 | 08/04/2020 – $50,500.00 |
| 08/16/2019 – $25,000.00 | 08/05/2020 – $15,000.00 |
| 08/19/2019 – $10,000.00 | 08/06/2020 – $15,000.00 |
| 09/09/2019 – $ 5,000.00 | 09/29/2020 – $ 2,086.54 |
| 10/03/2019 – $25,000.00 | 10/15/2020 – $ 6,826.51 |
| 10/03/2019 – $ 1,700.00 | 01/29/2021 – $   975.00 |

TOTAL.    $541,097.87[17]

#### a. *IFS's contention that the above transfers were unauthorized*

Mr. Thiessen testified that he believed the above transfers were not authorized by the Board of Managers, and that such transfers may have violated IFS's operating agreement(s); therefore, the Defendant must return such unauthorized transfers to IFS. Mr. Thiessen testified that he based his belief that the above payments were not "authorized" on his review of IFS books and records. He testified further that, during his review of IFS's books and records, he had not seen or come across any documents or Board of Managers minutes or resolutions authorizing or approving any of the above transfers.

---

[17] Complaint, at Attachment A; *see also* Exs. 1–29, 31.

During cross-examination, however, Mr. Thiessen admitted (i) he was not on the Board of Managers during the time the transfers were made; (ii) prior to July 2022, he did not recall ever reviewing IFS's books and records or even asking to review IFS's books and records; and (iii) he had not (and has not) personally reviewed all of the "truckload" of documents he was provided when he became CEO of IFS in July 2022. IFS did not offer into evidence any other documents—such as IFS's operating agreement(s)—to corroborate Mr. Thiessen's belief that the transfers violated IFS's operating agreement(s) in effect at the time of the transfers. Further, IFS did not offer the testimony of any other witnesses who would (or should) have personal knowledge to corroborate the accuracy of Mr. Thiessen's belief that the above transfers were not authorized. Although the Court found Mr. Thiessen to be credible, much of his testimony was limited to his understanding and belief; consequently, he lacked the actual personal knowledge for his testimony to be persuasive.

The Defendant, on the other hand, testified that none of the identified transfers required official Board of Managers approval and none of the transfers were prohibited by the applicable operating agreements in effect at the time such transfers were made. The Defendant testified further that each of the transfers were recorded in IFS's QuickBooks—which was corroborated, in part, by the limited QuickBooks journal entries IFS offered into evidence.[18] Additionally, the Defendant testified that (i) he never concealed any of the transfers from the Board of Managers or the IFS members; and (ii) the books and records for IFS, including QuickBooks, were always available to members for review and inspection throughout his tenure as CEO of IFS. Other than

---

[18] Ex. 31.

Mr. Thiessen's testimony, which primarily was limited to his belief and understanding, the Defendant's testimony was not controverted with evidence by IFS.

Based upon the evidence presented at trial, the Court finds and concludes that IFS failed to satisfy—by a preponderance of the evidence—its burden of proof to establish that any of the above transfers were not authorized.

    b.  *IFS contends that the above transfers were misappropriated or embezzled by the Defendant, or were fraudulent*

Mr. Thiessen testified that he believed the above transfers of IFS funds were either misappropriated, embezzled, or fraudulent because he has not seen or come across any documents that evidence the legitimacy of any of the transfers. Again, Mr. Thiessen testified that he based his belief on his review of the IFS books and records.

During cross-examination, however, Mr. Thiessen admitted that (i) he did not have an accounting background; (ii) he was not on the Board of Managers during the time the transfers were made; (iii) prior to July 2022, he did not recall ever reviewing IFS's books and records or even asking to review IFS's books and records; and (iv) he has not personally reviewed all of the "truckload" of documents he was provided when he became CEO of IFS in July 2022. Mr. Thiessen's testimony was limited to his understanding and belief; consequently, he lacked actual personal knowledge for his testimony to be persuasive. Additionally, other than the bank statements, checks, and accounting entries reflecting the transfers were made (which are not in dispute by the Defendant), IFS did not offer into evidence any other documents or testimony from other witnesses who would (or should) have personal knowledge to corroborate Mr. Thiessen's belief that such transfers constituted either misappropriation, embezzlement, or fraud by the Defendant.

The Defendant, on the other hand, testified that none of the identified transfers required official Board of Managers approval and none of the transfers were prohibited by the applicable operating agreements in effect at the time such transfers were made. The Defendant testified further that each of the transfers were recorded in IFS's QuickBooks—which was corroborated, in part, by the limited QuickBooks journal entries offered into evidence by IFS.[19] The Defendant also testified that (i) he never concealed any of the transfers from Board of Managers or the members; and (ii) the books and records for IFS, including QuickBooks, were always available to members for review and inspection throughout his tenure as CEO of IFS.

Further, the Defendant testified that each of the above transfers constituted reimbursements to him (or one of his Affiliates) for obligations owed by IFS. The Defendant testified that, between 2013 and 2019, either he or one of his Affiliates advanced to or paid obligations for IFS totaling more than $620,000. The Defendant testified further that each of the advances or payments made to or on behalf of IFS were recorded in IFS's QuickBooks as obligations owing by IFS, and it was his understanding that many such obligations were booked to various ledger accounts—including "Ask My Accountant" and various "due to/due from" accounts for R. Kevin Russell, Eastman Midstream, Russco, and others. The Defendant testified further that each of these QuickBooks ledger accounts were timely reconciled with corresponding balance sheet or income statement ledger accounts on a monthly or yearly basis.

The Defendant's testimony on these points went largely uncontroverted—other than Mr. Thiessen's testimony that he personally was not aware of the transactions, and that he did not see or come across documents or corresponding entries in QuickBooks to corroborate the Defendant's

---

[19] Ex. 31.

contentions. Again, other than Mr. Thiessen's testimony, IFS did not offer into evidence any other reliable or persuasive documents or testimony to controvert the Defendant's testimony.

The Court found the Defendant's testimony was largely uncontroverted by IFS, and Mr. Thiessen's testimony, by itself, lacked the necessary personal knowledge to persuasively satisfy IFS's burden to establish that any of the transfers to the Defendant constituted either misappropriation, embezzlement, or fraud. Therefore, the Court finds and concludes that IFS failed to satisfy—by a preponderance of the evidence—its burden of proof to establish a claim that the above transfers constituted either misappropriation, embezzlement, or fraud by the Defendant.

Consequently, the Court finds and concludes that IFS's claim that the $541,079.87 in transfers to the Defendant constitute either misappropriation, embezzlement, or fraud is ***DENIED*** and ***DISMISSED***.

**B. IFS contends that the Defendant breached his fiduciary duty owed to IFS or committed acts that willfully and maliciously caused injury to IFS**

IFS next contends that the Defendant committed multiple breaches of his fiduciary duty to IFS or committed acts that willfully and maliciously caused IFS injury. The Defendant's alleged breaches of fiduciary duty or alleged willful and malicious acts centered around the following matters:

- The Austin Bank Loan;
- The Origin Bank Loans;
- The Certificate of Deposit securing the Origin Bank Loan;
- The settlement with IKE Energy, LLC ("***IKE Energy***");
- The dilution of founding members interests in IFS;
- The dilution of the Defendant's interest in IFS;

- The failure to maintain accurate books and records for IFS;

- The ownership of the pipelines servicing the Charging Stations; and

- The adverse operation issues experienced at the Longview, Texas, Charging Station in April 2022.

IFS, however, failed to satisfy—by a preponderance of the evidence—its burden to prove that the Defendant breached any fiduciary duty to IFS concerning any of the above matters. For example, IFS contends that in 2013, the Defendant was sued personally by IKE Energy for his alleged violation of a non-disclosure agreement with IKE Energy. IFS further contends that the Defendant settled his liability to IKE Energy by paying $150,000.00 from IFS funds. IFS failed, however, to offer any credible evidence in support of its contention. The only evidence offered by IFS was the testimony of Mr. Thiessen, but he did not have detailed personal knowledge of the suit or the resulting settlement. Mr. Thiessen reluctantly admitted that IFS was also a defendant in that same lawsuit and that certain Board of Managers and members of IFS were aware of the IKE Energy litigation.

The Defendant, on the other hand, testified that the litigation with IKE Energy named both the Defendant and IFS as defendants and that the litigation with IKE Energy was settled by both IFS and the Defendant, jointly and severally. The Defendant testified further that the settlement payment made on behalf of IFS and the Defendant was booked in the company books and records and that the Defendant's Affiliate, Russco, funded a portion of the settlement amount on behalf of IFS. IFS failed to offer any credible evidence to controvert the Defendant's testimony.

Based upon the evidence presented at trial, the Court finds and concludes that IFS failed to satisfy—by a preponderance of the evidence—its burden of proof to establish that the Defendant

14

committed fraud, breached his fiduciary duty, or acted willfully and maliciously with intent to cause harm to IFS concerning the IKE Energy settlement payments.

Even if IFS had presented credible evidence in support of its claim regarding the IKE Energy matter (to be clear, the Court does not so find), the Court further finds and concludes that the Defendant's Statute of Limitations affirmative defense [20] to this claim has merit and is sustained. Therefore, IFS's claim that the Defendant committed fraud or breached his fiduciary duty by using IFS funds to settle his alleged settlement obligation to IKE Energy is time-barred.

With regard to IFS's other allegations of breach of fiduciary duty or willful and malice injury, based upon the evidence presented at trial, the Court finds and concludes that IFS failed to satisfy—by a preponderance of the evidence—its burden of proof to establish that the Defendant breached his fiduciary duty to IFS or committed acts to willfully and maliciously cause injury to IFS. Again, the only evidence IFS offered in support of these contentions was the testimony of Mr. Thiessen, and his testimony alone did not satisfy IFS's burden to establish that the Defendant breach his fiduciary duty to IFS or acted willfully and maliciously to cause injury to IFS. Further, the Defendant denied each of the contentions IFS raised in the Complaint, and his testimony was largely not controverted by credible evidence.

Consequently, the Court finds and concludes that IFS's claims against the Defendant for alleged fraud, breach of his fiduciary duty to IFS, or acts committed willfully and maliciously to cause injury to IFS is ***DENIED*** and ***DISMISSED***.

---

[20] ECF No. 20, at pg. 9.

**C.     IFS contends that the Defendant's obligations to IFS should not be discharged under 11 U.S.C. § 523(a)(2), (4), or (6)**

For all of the reasons detailed above, the Court finds and concludes that IFS failed to satisfy—by a preponderance of the evidence—its burden of proof to establish that the Defendant owes any debt to IFS. Consequently, Counts One through Five of the Complaint each fail and are ***DENIED*** and ***DISMISSED***.

## IV.     CONCLUSION

IFS failed to prove—by a preponderance of the evidence—that the Defendant (i) was paid an unauthorized salary from IFS, (ii) received unauthorized transfers of IFS funds, (iii) misappropriated IFS funds, (iv) embezzled IFS funds, (v) received fraudulent transfers of IFS funds, (vi) breached his fiduciary duties to IFS, or (vii) committed acts to willfully and maliciously caused injury to IFS. Consequently, the Court will enter a separate final judgment for the Defendant.

### ### END OF FINDINGS OF FACT AND CONCLUSIONS OF LAW ###